UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHASIDY M.,[1]                                    Case No. 2:21-cv-4679
    Plaintiff,                            Sargus, J.
                                          Litkovitz, M.J.
    vs.

COMMISSIONER OF                          **REPORT AND**
SOCIAL SECURITY,                         **RECOMMENDATION**
    Defendant.

Plaintiff Chasidy M. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3)

for judicial review of the final decision of the Commissioner of Social Security (Commissioner)

denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security

income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 7) and the

Commissioner's response (Doc. 12).

**I. Procedural Background**

Plaintiff filed applications for DIB and SSI in November 2018, alleging that she has been

disabled since July 31, 2015, due to anxiety, depression, bipolar disorder, and post-traumatic

stress disorder (PTSD). (Tr. 245). The applications were denied initially and on reconsideration.

Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative

law judge (ALJ) Noceeba Southern. Plaintiff and a vocational expert (VE) appeared and

testified at the ALJ telephonic hearing on September 2, 2020. (Tr. 38-60). On September 14,

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

2020, the ALJ issued a decision denying plaintiff's applications.  (Tr. 12-32).  The Appeals

Council denied plaintiff's request for review, making the ALJ's decision the final decision of the

Commissioner.  (Tr. 1-6).

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A).  The impairment must render the claimant unable to engage in the work

previously performed or in any other substantial gainful employment that exists in the national

economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).[2] The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2020.

2. [Plaintiff] has not engaged in substantial gainful activity since July 31, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments: Obesity, Depression, Anxiety, ADHD, PTSD (20 CFR 404.1520(c) and 416.920(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404,

---

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)). The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations, and vice versa, for purposes of this Report and Recommendation.

Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, and 20 CFR 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can change from sitting to standing every hour for 2 to 3 minutes while remaining on task.  She can frequently climb ramps and stairs, but should avoid climbing ladders, ropes, scaffolds.  She can frequently balance, stoop, kneel, crouch, and crawl.  She should avoid workplace hazards such as heavy moving machinery and unprotected heights.  [Plaintiff] can perform simple repetitive tasks involving few detailed instructions, and having only occasional changes and decision making, with changes well explained.  Work should have no fast pace or strict production quotas.  She should avoid contact with the public but can have occasional superficial interaction with coworkers and supervisors.  "Superficial" is defined as that which is beyond job duties and functions, for a specific purpose and short duration.  She should not perform tandem work or work that requires conflict resolution skills, and should have no over the shoulder supervision.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 20 CFR 416.965).[3]

7. [Plaintiff] was . . . 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), and 20 CFR 416.969 and 416.969(a)).[4]

---

[3] Plaintiff's past relevant work was as a hair stylist, a light exertion, semi-skilled position. (Tr. 30-31, 56).  The VE testified that plaintiff also had past relevant work in retail sales, a light exertion, low semi-skilled position.  (Tr. 56).

[4] Relying on the VE's testimony, the ALJ found that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as dishwasher (520,000 jobs in the national economy) and laundry worker (100,000 jobs in the national economy).  (Tr. 31, 57-58).

4

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from July 31, 2015, through the date of this decision (20 CFR 404.1520(g) and 20 CFR 416.920(g)).

(Tr. 17-32).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

5

### D.  Specific Errors

Plaintiff's first assignment of error asserts that the ALJ's residual functional capacity (RFC) determination is not supported by substantial evidence because she failed to properly evaluate and account for limitations opined by consulting examiner Valerie Budervic, Psy.D.,[5] and state agency psychologists Irma Johnston, Psy.D., and Janet Souder, Psy.D.  Plaintiff's second assignment of error asserts that the ALJ erroneously "played doctor" and vocational expert by dismissing one of the opinions of consulting examiner Travis Frantz, M.D., based on her own assumptions related to medical and vocational evidence.  Plaintiff's third assignment of error asserts that the ALJ based her finding at step five of the sequential evaluation process on erroneous job numbers and an incomplete hypothetical that was less restrictive than the determined RFC.

The Commissioner argues in response that the ALJ's determination of plaintiff's RFC accounted for the restrictions and limitations contained in the opinions that she found persuasive, and the ALJ was not otherwise required to incorporate such opinions "word-for-word" into the RFC determination.  The Commissioner argues that the ALJ's treatment of Dr. Frantz's opinion was supported by substantial evidence.  Even if it were not, the Commissioner argues that this error as well as the alleged vocational errors were harmless.

---

[5] The parties agree that the ALJ erroneously refers to this opinion as that of Bob Stinson, Psy. D.  (Doc. 7 at PAGEID 765 n.1; Doc. 12 at PAGEID 785 n.3).  (*See* Tr. 28).

1. <u>Drs. Budervic, Johnston, and Souder</u>[6]

Plaintiff argues that the ALJ found the opinions of these doctors persuasive (*see* Tr. 28, 30) and yet did not fully incorporate them into her RFC determination.  In particular, plaintiff identifies the following opinions:

**Dr. Budervic**

- "the need for supervisory 'check-ins' to ensure that plaintiff was completing tasks and to enhance productivity"

- "the need for additional short breaks to accommodate [p]laintiff's mental health symptoms"

(Doc. 7 at PAGEID 766, referring to Tr. 502-03).

**Drs. Johnston and Souder**

- "[p]laintiff may need supervisory support when learning new tasks"

- "[p]laintiff should work in an area without frequent distractions"

- "[p]laintiff would need extra time to adjust to major changes"

(*Id.*, referring to Tr. 72-74, 88-90, and 113-14).

Plaintiff argues that it is accordingly impossible to determine whether the ALJ took these aspects of their opinions into account or simply ignored them.  Plaintiff cites *Stacey v. Comm'r of Soc. Sec.*, in which the ALJ did not substantively address an examining physician's opinion that conflicted with the state agency's opinion, the latter of which the ALJ had found persuasive.

---

[6] Plaintiff's argument is limited to the extent to which the ALJ incorporated these persuasive opinions into her RFC determination as opposed to the evaluation thereof under applicable regulations.  Any argument related to the latter is therefore deemed waived.  *See Watts v. Comm'r of Soc. Sec.*, No. 1:16-cv-319, 2017 WL 430733, at *11 (S.D. Ohio Jan. 31, 2017) (argument waived where plaintiff did not "develop it legally or factually in the Statement of Errors"), *report and recommendation adopted*, 2017 WL 680538 (S.D. Ohio Feb. 21, 2017).

451 F. App'x 517, 520 (6th Cir. 2011).   The court concluded that this was error because it could not determine whether the examining physician's opinion was rejected "for legitimate or illegitimate reasons or whether he failed to consider it at all. . . ." *Id.*  Plaintiff also cites *Moore v. Colvin*, in which "the ALJ gave 'significant' weight to all State agency consultative psychologists without distinction" but certain elements of those opinions clearly contradicted the ALJ's RFC determination.  No. 2:14-cv-455, 2015 WL 5675805, at *6 (S.D. Ohio Sept. 28, 2015).  The Court cited *Stacey* and concluded that it was accordingly "left with an inability to discern whether the ALJ discounted portions of these three State agency consultants' opinions for valid or invalid reasons, or simply ignored them altogether." *Id.* at *7.

The Commissioner, by contrast, relies on authority holding that the ALJ need not incorporate persuasive opinions into the RFC verbatim and, in fact, such a requirement would improperly delegate the Commissioner's authority to determine a plaintiff's RFC.  *See, e.g., Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (An ALJ is "not required to recite the medical opinion of a physician verbatim in h[er] [RFC] finding.");  *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would . . . [abdicate] the Commissioner's statutory responsibility to determine whether an individual is disabled.'") (quoting Social Security Ruling (SSR)[7] 96-5p, 1996 WL 374183, at *2).

---

[7] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

The Court concludes that the ALJ appropriately incorporated all of the contested elements of Drs. Budervic, Johnston, and Souder's opinions identified by plaintiff,[8] and the ALJ's RFC determination is therefore based on substantial evidence.  The Court addresses each particular opinion raised by plaintiff in turn.

Plaintiff first argues that the ALJ failed to incorporate consulting examiner Dr. Budervic's opinion that plaintiff would "benefit from supervisory 'check-ins' to ensure she is completing tasks and to enhance productivity."  (Tr. 502).  Plaintiff, however, divorces this phrase from its context, which was:

> [I]t is expected that *if [plaintiff] is working at simpler tasks* or tasks that she finds interesting, she would *likely not have significant difficulty sustaining concentration and persisting in work-related activity at a reasonable pace*. However, *for more complex tasks*, [plaintiff] will likely have difficulties and will require extra time and supervision to complete such tasks.  She will benefit from supervisory "check-ins" to ensure she is completing tasks and to enhance productivity.

(*Id.*) (emphasis added).  Because the ALJ limited plaintiff to an RFC of only "simple repetitive tasks involving few detailed instructions, and having only occasional changes and decision making, with changes well explained[,]" the latter portion of Dr. Budervic's opinion related to "more complex tasks" is not implicated.  (Tr. 24, 502).

Plaintiff next argues that the ALJ failed to incorporate Dr. Budervic's opinion that plaintiff "would benefit from . . . being permitted to take additional short breaks while at work if mental health symptoms worsen while on the job."  (Tr. 503).  As an initial matter, in context, Dr. Budervic made this statement as part of a set of alternatives[9] and said it applied only "if"

---

[8] The Court finds that plaintiff has waived any argument that any other elements of these opinions were not properly incorporated into the ALJ's RFC determination.  *See Watts*, 2017 WL 430733, at *11.

[9] The other alternative was that plaintiff "learn[] and implement[] appropriate coping strategies. . . ."

symptoms worsened, both of which belie the suggestion that Dr. Budervic opined that additional short breaks were *necessarily* a limitation. (*Id.*). In addition, "[a] statement that [p]laintiff would work best in a particular environment is not equivalent to an opinion that [s]he lacks the capacity to work in any other type of environment." *Yerian v. Comm'r of Soc. Sec.*, No. 2:17-cv-562, 2018 WL 4357479, at *2 (S.D. Ohio Sept. 13, 2018).

Plaintiff next takes issue with state agency psychologists Johnston and Souder's opinions that plaintiff "[m]ay need supervisory support for learning new tasks[,]" may need "extra time to adjust" to major changes to her work, and should work in an environment "without frequent distraction." (Tr. 72-74, 88-90, and 113-114). While not incorporating these opinions verbatim, the ALJ limited plaintiff to "simple repetitive tasks involving few detailed instructions, . . . only occasional changes and decision making, with changes well explained[,]" and "no fast pace or strict production quotas" (Tr. 24). The Court finds that the ALJ's adopted limitations account for supervisory support with new tasks, extra time to adjust to work changes, and distractions. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir. 2014) (limitation to "routine" and "repetitive" tasks adequately accounted for issues with the ability to respond to work changes); *Thompson v. Comm'r of Soc. Sec.*, No. 2:16-cv-546, 2017 WL 3446490, at *7 (S.D. Ohio Aug. 11, 2017) (an RFC "limiting [the plaintiff] to working in a setting that 'imposes no more than occasional changes in the work routine, explained and/or demonstrated in advance of implementation'" adequately accounted for a persuasive opinion that the plaintiff needed "additional supervision and guidance"); *Koetje v. Comm'r of Soc. Sec.*, No. 1:18-cv-750, 2020 WL 1242578, at *7 (W.D. Mich. Mar. 16, 2020) (an RFC limiting plaintiff to unskilled work

with a simple routine adequately accounted for issues with a claimant's ability to concentrate, persist, or maintain pace due to pain and medication side effects).

The ALJ's RFC determination adequately accounts for each of the aspects of Drs. Budervic, Johnston, and Souder's opinions raised in plaintiff's first assignment of error.  As such, the ALJ's decision is supported by substantial evidence in this respect.  Plaintiff's first statement of error should be overruled.

### 2.  Travis Frantz, M.D.

In her second statement of error, plaintiff argues that the ALJ erred in evaluating Dr. Frantz's opinion that "given her underlying communicable disease [hepatitis C], [plaintiff] should avoid any position which would allow possible transmission to fellow coworkers, customers or clients."  (Tr. 523).  Plaintiff argues that this error impacted steps four and five of the sequential evaluation process.  In particular, plaintiff argues that the ALJ impermissibly rejected this opinion based on her raw interpretation of medical evidence and made unwarranted assumptions regarding its vocational implications.  The Commissioner responds that the ALJ's discount of Dr. Franz's opinion overall was substantially supported.  The Commissioner further argues that, to the extent that the ALJ's response to this particular piece of Dr. Frantz's opinion was improper, it was harmless error.

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions.  *See* 20 C.F.R. § 1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)).  These new regulations eliminate the "treating physician rule" and deference to treating

source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[10]  *Id.*  The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[11] including those from your medical sources."  20 C.F.R. § 1520c(a).  Rather, the Commissioner will consider "how persuasive" the medical opinion is.  20 C.F.R. § 1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion.  20 C.F.R. § 1520c(c)(1)-(5).  The most important factors the ALJ must consider are supportability and consistency.  20 C.F.R. § 1520c(b)(2).  With respect to the supportability factor, "[t]he more relevant the objective medical evidence[12] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."  20 C.F.R. § 1520c(c)(1).  Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and

---

[10] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion."  *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

[11] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.  For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[12] Objective medical evidence is defined as "signs, laboratory findings, or both."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ."  20 C.F.R. §

1520c(c)(2).  The ALJ is required to "*explain* how [he/she] considered the supportability and

consistency factors for a medical source's medical opinions" in the written decision.  20 C.F.R. §

1520c(b)(2) (emphasis added).  Conversely, the ALJ "may, but [is] not required to, explain" how

he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3)

through (c)(5) of the regulation.  *Id.*  However, where two or more medical opinions or prior

administrative findings about the same issue are equally persuasive, the ALJ must articulate how

he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ."

20 C.F.R. § 404.1520c(b)(3).  Finally, the ALJ is not required to articulate how he or she

considered evidence from nonmedical sources.  20 C.F.R. § 404.1520c(d).

      The ALJ broke Dr. Frantz's opinion into three distinct pieces.  The ALJ found Dr.

Frantz's mental functional limitations "not . . . valuable" because he did not have a mental health

background—a conclusion plaintiff does not challenge.  (Tr. 19).  *See Watts*, 2017 WL 430733,

at *11.  The ALJ found Dr. Frantz's exertional limitations "not . . . persuasive" because they

were based on plaintiff's subjective symptom reports and inconsistent with objective clinical

findings—another conclusion plaintiff does not challenge.  (Tr. 19).  Finally, and as relevant to

plaintiff's appeal, the ALJ implied that Dr. Frantz's limitation related to plaintiff's hepatitis C

was not persuasive because "hepatitis C is a blood borne virus" and therefore "prohibition on

work in positions that would allow possible transmission [was] expected to cause only negligible

diminution of the available work base of simple unskilled work."  (*Id.*).  The ALJ does not

otherwise comment on the persuasiveness of this piece of Dr. Frantz's opinion.

The Commissioner's primary argument in support of the ALJ's treatment Dr. Frantz's hepatitis C-related opinion appears to be that, because the ALJ provided two unchallenged reasons for discounting the exertional limitation portion of Dr. Frantz's opinion (the facts that it was based on plaintiff's subjective symptom reports and inconsistent with objective clinical findings), the ALJ is insulated from *any* challenge related to her treatment of any part of Dr. Frantz's opinion—including a totally distinct portion (i.e., the hepatitis C-related limitation).

The Commissioner cites *Murray v. Comm'r of Soc. Sec.* for the proposition that an invalid reason for rejecting a medical opinion is harmless where the ALJ's other reasons are supported by substantial evidence.[13]  No. 2:21-cv-2078, 2021 WL 6063289, at *5 (S.D. Ohio Dec. 22, 2021).  *Murray* is distinguishable.  In *Murray*, the Court considered a treating psychiatrist's opinions that the plaintiff was markedly or extremely limited in most mental functioning areas, would be absent three times per month, and would be of task 20% or more of each workday.  *Id.* at *4.  The ALJ had found that these opinions were not supported by the physician's own treatment notes, inconsistent with other medical records, and inconsistent with plaintiff's conservative treatment.  *Id.* at *4-5.  The Court found that a fourth reason given by the ALJ for discounting the opinion was invalid but that the error was harmless given the other, valid reasons.  *Id.* at *5.  In *Murray*, however, both the valid reasons and the invalid reason cited by the ALJ pertained to the same opinions (i.e., that the plaintiff required extreme mental functional limitations).  Under a fair reading of the entire section of the ALJ's decision regarding Dr.

---

[13] The Commissioner also cites *Foutty v. Comm'r of Soc. Sec.*, No. 2:18-cv-285, 2019 WL 3927236, at *15 (S.D. Ohio Aug. 20, 2019), and *Detty v. Comm'r of Soc. Sec.*, No. 2:19-cv-4366, 2020 WL 6557592, at *7 (S.D. Ohio Nov. 9, 2020), *report and recommendation adopted*, 2021 WL 1172556 (S.D. Ohio Mar. 29, 2021).  These decisions do not discuss harmless error and appear to be cited as supporting the substantive bases for the ALJ's discount of the exertional-limitation portion of Dr. Frantz's opinion.

Frantz's opinions, it is clear that the two unchallenged and seemingly valid reasons cited by the Commissioner relate *only* to Dr. Frantz's proffered exertional limitations. As such, the Court does not find the reasoning of *Murray* dispositive in this case.

The Commissioner does not otherwise substantively defend the ALJ's treatment of Dr. Frantz's hepatitis C-related opinion. The ALJ did not cite to any medical evidence in the record or seek guidance from a medical expert disputing Dr. Frantz's limitation that plaintiff avoid any position that would allow possible transmission of hepatitis C to individuals in the work environment. It is evident to the Court that the ALJ's conclusion about the nature of hepatitis C ("a blood born virus") and its transmissibility represents an improper substitution of the ALJ's "own medical judgment for th[at] of [a] trained professional[]" and does not comport with 20 C.F.R. § 404.1520c. *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 562 (6th Cir. 2014) (citing *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006)). (*See* Tr. 19 ("[A]s [plaintiff's] hepatitis C is a blood borne virus, the prohibition on work . . . is expected to cause only negligible diminution of the available work base. . . .")). The Court therefore finds that the ALJ's treatment of Dr. Frantz's hepatitis C-related opinion is not based on substantial evidence.

Nevertheless, the Commissioner argues that any potential error related to Dr. Frantz's hepatitis C-related opinion was harmless. "[E]ven where the ALJ's decision is based on mistakes, this Court affirms those conclusions if the mistakes constituted harmless error." *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) (citing *Berryhill v. Shalala*, No. 92-5876, 4 F.3d 993, 1993 WL 361792, at *7 (6th Cir. Sept. 16, 1993)). If, however, the Court has "substantial doubt" as to whether the agency would have made the same

ultimate disability finding without the ALJ's error regarding Dr. Frantz's hepatitis C-related opinion, it should remand the case.  *Berryhill*, 4 F.3d 993, at *7 (quoting *Kurzon v. U.S. Postal Serv.*, 539 F.2d 788, 796 (1st Cir. 1976)).

Plaintiff argues that had the ALJ included Dr. Frantz's hepatitis C-related opinion in his RFC determination and VE questioning, it could very well have impacted the VE's testimony. Plaintiff notes that both of the positions relied on by the ALJ at step five of the sequential evaluation process (dishwasher and laundry worker) "involve direct contact with items which will then come in direct contact with customers."  (Doc. 7 at PAGEID 768).  The Commissioner argues in response that the ALJ adequately accounted for the limitation at issue in his RFC determination and, in any event, the jobs identified by the ALJ at step five of the sequential evaluation process do not require significant interaction with others.  *Cf. Beery v. Comm'r of Soc. Sec.*, 819 F. App'x 405, 408 (6th Cir. 2020)  ("We will treat an ALJ's failure to articulate her reasons for the weight she assigned to a medical source opinion as a harmless error if the ALJ adopted the opinion or made findings consistent with that opinion.").   The Commissioner also argues plaintiff's interpretation of Dr. Frantz's hepatitis C-related limitation is broader than his actual opinion.  (*See* Doc. 12 at PAGEID 792 ("Plaintiff theorizes that Dr. Frantz's opinion would prohibit her from touching any *item* that could later possibly be touched by a member of the public")).  The Commissioner points to the Centers for Disease Control and Prevention's (CDC's) website, which suggests that people with hepatitis C should not be restricted from certain job settings, including "service providers. . . ."  *See* https://www.cdc.gov/hepatitis/hcv/cfaq.htm#H1 (last visited June 28, 2022).

16

The Commissioner points to the following limitations in the ALJ's RFC determination as accounting for Dr. Frantz's hepatitis C-related opinion: "[plaintiff] should avoid contact with the public but can have occasional superficial interaction with coworkers and supervisors." Relatedly, the Commissioner argues that plaintiff has not satisfied her burden to demonstrate a work-related limitation associated with her hepatitis C diagnosis; put differently, plaintiff has not shown how Dr. Frantz's opinion would preclude the jobs of dishwasher or laundry worker identified by the ALJ at step five of the sequential evaluation process.  The Commissioner cites *Angelo v. Comm'r of Soc. Sec.*, in which the undersigned concluded that the ALJ did not err in failing to address hepatitis C at step two of the sequential evaluation process or account for it in his RFC determination because there was "no [hepatitis C-related] evidence showing functional restrictions."  No. 1:12-cv-169, 2013 WL 765646, at *5 (S.D. Ohio Feb. 28, 2013), *report and recommendation adopted*, 2013 WL 1344841 (S.D. Ohio Apr. 2, 2013).  The Commissioner also cites *Cannon v. Comm'r of Soc. Sec.*, No. 2:14-cv-2397, 2018 WL 1151185, at *4 (S.D. Ohio Mar. 5, 2018).  In *Cannon*, however, the plaintiff argued "*only* that the ALJ should have concluded that [her hepatitis] constitute[d] severe impairment[]" but did "not identif[y] any limitation[] caused by her . . hepatitis . . . that [was] not encompassed in the RFC. . . ."  *Id.* (emphasis added).

In contrast to both *Angelo* and *Cannon*, plaintiff here does identify a hepatitis C-related limitation contained in Dr. Frantz's opinion.  The Commissioner admits as much.  (*See* Doc. 12 at PAGEID 792 ("Plaintiff cites *no* evidence *apart from Dr. Frantz's opinion* suggesting that her hepatitis C required any work-related limitation. . . .") (latter emphasis added)).  And while that

17

limitation (avoiding positions which would allow possible transmission) is related to the *amount* of interaction with others, which is addressed in the ALJ's RFC determination, it actually focuses on the *nature* of the interaction, which is not included in the ALJ's RFC determination.  (*See* Tr. 523 ("[G]iven [plaintiff's] underlying communicable disease [hepatitis C] she should avoid any position which *would allow possible transmission* to fellow coworkers, customers or clients.") (emphasis added)).

The Court's own research identified three cases in which a claimant's impairments included a communicable disease, but none settles this statement of error.  In *Matthew S. B. v. Comm'r of Soc. Sec.*, Dr. Frantz (the same doctor whose opinion is at issue here) had opined that the plaintiff "should avoid any work environment which may put other employees or customers at risk due to the possible underlying communicable disease [AIDS]."  No. 2:21-cv-2403, 2022 WL 1500456, at *9 (S.D. Ohio May 12, 2022).  The plaintiff in *Matthew S.*, however, did not raise arguments related to this aspect of Dr. Frantz's opinion or its vocational implications and instead focused on an unrelated hip impairment.  *Id.* at *4.  In *Napier v. Colvin*, the court implied in a footnote that the ALJ had appropriately rejected one of the jobs identified by the VE (meat processor) because the plaintiff had hepatitis C.  No. 12-cv-5095, 2013 WL 3353873, at *4 & n.2 (W.D. Ark. July 3, 2013) ("[T]he [VE] testified that Plaintiff could also perform work as a meat processor.  However, as . . . properly discussed by the ALJ, Plaintiff appears to have tested positive for Hepatitis C, a communicable disease, therefore the work as a meat processor is not included in the work Plaintiff could perform.").  *Napier* does not, however, discuss whether the record therein contained a medical opinion supporting this decision or whether the VE had been

otherwise apprised of the plaintiff's hepatitis C.  Finally, in *Campbell v. Barnhart*, a plaintiff

with hepatitis C argued that the ALJ had erred when he found that she could return to her prior

work in the food industry.  No. 4:04-cv-202, 2005 WL 4881106, at *4 (S.D. Ind. Oct. 9, 2005).

In contrast to the record at bar, however, the court noted that "[t]here [wa]s *no* evidence in the

record that shows someone with hepatitis C should not work in the food industry. . . ." *Id.*

(emphasis added).  On that basis, among others, the court overruled the plaintiff's objection.

At base, the parties' primary point of contention is whether the ALJ's error in her

treatment of Dr. Frantz's hepatitis C-related opinion impacted the vocational testimony, such that

the error prejudiced plaintiff.  *Rabbers*, 582 F.3d at 651.  At step five of the sequential evaluation

process, the burden shifts to the Commissioner "to identify a significant number of jobs in the

economy that accommodate the claimant's [RFC] (determined at step four) and vocational

profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  The Commissioner

may meet his burden through reliance on a VE's testimony in response to a hypothetical

question.  To constitute substantial evidence in support of the Commissioner's burden, the

hypothetical question posed to the VE must accurately reflect the claimant's physical and mental

limitations. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010); *Howard v.

Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002); and *Varley v. Sec'y of H.H.S.*, 820 F.2d

777, 779 (6th Cir. 1987).

Here, the ALJ's hypothetical question to the VE included the limitations that the

individual have only "occasional but superficial interactions with others including coworkers and

supervisors, superficial being that which is beyond the performance of job duties and jobs for

19

specific purpose and of short duration, [and] avoid interaction with the public. . . ."  (Tr. 57).  In response, the VE testified that the individual could perform the jobs of dishwasher and laundry worker.  (Tr. 57-58).  The ALJ's hypothetical omitted the limitation imposed by Dr. Frantz that plaintiff should "avoid any position which would allow possible transmission to fellow coworkers, customers or clients."  (Tr. 523).

The Court finds that the hypothetical propounded by the ALJ failed to accurately describe plaintiff's functional limitations.  As explained above, the ALJ's assessment of Dr. Frantz's hepatitis C-related opinion, which in turn was not incorporated into plaintiff's RFC, is not supported by substantial evidence.  Therefore, the ALJ's failure to include this limitation in his hypothetical question to the VE was also in error.  *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated [RFC], which did not accurately portray claimant's physical and mental impairments).  Because the ALJ's hypothetical question failed to accurately portray plaintiff's functional impairments, the VE's testimony in response thereto does not constitute substantial evidence that plaintiff could perform the jobs identified by the VE.  Therefore, plaintiff's second assignment of error should be sustained.[14]

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that vocational errors generally require a

_____

[14] The Commissioner's argument that this is harmless is error is based, in part, on information outside the record of this case (*see* Doc. 12 at PAGEID 792 n.6 (CDC guidance on the work implications of hepatitis C)).  However tempting it may be to credit this information over the medical evidence in the record, this Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

remand for further proceedings under Sentence Four of 42 U.S.C. § 405(g). *See Ealy*, 594 F.3d at 517; *Renn v. Comm'r of Soc. Sec.*, No. 1:09-cv-319, 2010 WL 3365944, at *6 (S.D. Ohio Aug. 24, 2010). Based on the facts of this case, it should be remanded for further proceedings, including reconsideration of Dr. Frantz's hepatitis C-related opinion, plaintiff's RFC assessment, and vocational considerations consistent with this decision.

Given this conclusion, the Court need not address plaintiff's third assignment of error,[15] which also concerns step five of the sequential evaluation process and will be mooted by the proceedings on remand.

**IT IS THEREFORE RECOMMENDED THAT** the decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

Date: 7/13/2022

Karen L. Litkovitz
United States Magistrate Judge

---

[15] "The ALJ based her Step Five finding of non-disability on erroneous job numbers and on an incomplete hypothetical that was less restrictive than the determined RFC." (Doc. 7 at PAGEID 758).

21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

CHASIDY M.,                                     Case No. 2:21-cv-4679
      Plaintiff,                           Sargus, J.
                                                Litkovitz, M.J.
      vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.  This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn*, 474 U.S. 140

(1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).